**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

ROSA P.,

                    Plaintiff,    1:20-cv-12284-NLH

v.                                **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

---

**APPEARANCES:**

JENNIFER LILLEY STONAGE
BROSS & FRANKEL
724 KENILWORTH AVE, SUITE 2
CHERRY HILL, NJ 08002

       *On behalf of Plaintiff*

EDA GIUSTI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

       *On behalf of the Commissioner*


**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[2] under Title II of the Social Security

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled during the relevant period.  For the reasons stated

below, this Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On May 1, 2017, Plaintiff protectively filed the instant

application for DIB,[3] alleging that she became disabled on March

7, 2012.  (ECF 12 at 1).  Plaintiff previously filed an

application for DIB on July 31, 2013 and that application was

initially denied on April 9, 2014 and upon reconsideration on

September 9, 2014.  (Id. at 2).  An ALJ held a hearing on

December 12, 2016 and issued an unfavorable decision on February

22, 2017.  (Id.)  Plaintiff did not appeal that decision.  (Id.)

In the instant matter, Plaintiff claims that she can no

_____

[2] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of
quarters of insured employment has suffered such a mental or
physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[3] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

longer work as a casino dealer, because of her impairments of lumbar degenerative disc disease, post-laminectomy syndrome, lupus, obesity hypertension, hyperlipidemia, urinary incontinence, obstructive sleep apnea, carpal tunnel syndrome, major depressive disorder, bipolar disorder, and anxiety.[4]

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an ALJ, which was held on January 8, 2020.  On March 3, 2020, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on July 2, 2020 making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.   DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.

---

[4] On application date of March 7, 2017, Plaintiff was 55 years old, which is defined as a person of "advanced age" (age 55 or older).  20 C.F.R. § 404.1563.

Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,

970 F.2d 1178, 1182 (3d Cir. 1992).   Substantial evidence means

more than "a mere scintilla."  Richardson v. Perales, 402 U.S.

389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305

U.S. 197, 229 (1938)).   It means "such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion."  Id.   The inquiry is not whether the reviewing

court would have made the same determination, but whether the

Commissioner's conclusion was reasonable.  See Brown v. Bowen,

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).   "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'"  Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).   The Third

Circuit has held that an "ALJ must review all pertinent medical

evidence and explain his conciliations and rejections."   Burnett

4

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all the non-

medical evidence before him.   Id. (citing Van Horn v. Schweiker,

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

700, 707 (3d Cir. 1981).

        The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the factfinder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.**    **Standard for DIB**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in

death, or which has lasted or can be expected to last for a

continuous period of not less than 12 months.  See 42 U.S.C. §

1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as

disabled only if her physical or mental impairments are of such

severity that she is not only unable to perform her past

relevant work, but cannot, given her age, education, and work

experience, engage in any other type of substantial gainful work

which exists in the national economy, regardless of whether such

work exists in the immediate area in which she lives, or whether

a specific job vacancy exists for her, or whether she would be

hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

process is summarized as follows:

6

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of her claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other
kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.   Analysis

At the outset, the ALJ noted that although the Plaintiff
alleged disability onset as of March 7, 2011, the Commissioner
already adjudicated that Plaintiff was not disabled from that
date through the date of the prior denial, February 22, 2017.
(R. at 21).  The ALJ noted that the doctrine of res judicata
precluded her from reevaluating whether Plaintiff was disabled
for the encompassed prior to February 22, 2017.  (Id.); 20
C.F.R. § 404.957(c)(1) ("The doctrine of res judicata applies in
that we have made a previous determination or decision under
this subpart about your rights on the same facts and on the same
issue or issues, and this previous determination or decision has
become final by either administrative or judicial action[.]")
In coming to that conclusion, the ALJ determined that "[a]
review of the prior file and the current file reveals that
claimant has not submitted any new and material evidence for the
period previously adjudicated." (R. at 21).  Further, the ALJ
determined that the end date of the relevant period for
Plaintiff's claims was March 31, 2017, as that was the last date
that Plaintiff was insured.  (R. at 22); Amy F. v. Comm'r of

Soc. Sec. Admin., No. CV 20-11613 (ZNQ), 2022 WL 1748010, at *4

(D.N.J. May 31, 2022) (noting that the relevant period ends on

the date last insured).

At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity between February 23, 2017 and

March 31, 2017, the relevant period for Plaintiff's claim.  (R.

at 23-24).  At step two, the ALJ found that Plaintiff's

impairments of lumbar degenerative disc disease, post-

laminectomy syndrome, lupus, and obesity were severe.  (Id. at

24).  The ALJ also determined that Plaintiff's history of

hypertension, hyperlipidemia, urinary incontinence, obstructive

sleep apnea, carpal tunnel syndrome, major depressive disorder,

and anxiety, were not severe.[5]  (Id.)  At step three, the ALJ

determined that Plaintiff's severe impairments or her severe

impairments in combination with her other impairments did not

equal the severity of one of the listed impairments. (Id. at 26-

27).

The ALJ next determined that Plaintiff had the residual

functional capacity ("RFC") to perform a full range of work at

the light level.[6]  (Id. at 27).  At steps four and five, the ALJ

_____

[5] In making this determination, the ALJ noted that Plaintiff did
not receive treatment for the non-severe conditions beyond
routine follow up during the relevant period.  (R. at 24).

[6] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the

determined that based on Plaintiff's RFC, she was able to

perform her past relevant work of a card dealer. (Id. at 31).

The ALJ therefore concluded that Plaintiff was not disabled.

(Id.)

Plaintiff argues that the ALJ erred in her decision because

she improperly disregarded the medical opinions of her treating

physicians, Dr. Anup Mani and Dr. Abdul Qadir, found Plaintiff's

mental health conditions and carpal non-severe and failed to

include them in the RFC, did not find a limitation beyond light

work, failed to include in the RFC a limitation regarding

Plaintiff's ability to speak English, and dismissed years of

medical records based on a five-week gap in those records

causing a failure to include her anxiety in her RFC.  (ECF 11 at

1-2).

Plaintiff mischaracterizes the ALJ's opinion.  With respect

to her first assignment of error, Plaintiff argues that the ALJ

failed to account for contradictory medical evidence when

discounting the medical opinions of Plaintiff's treating

physicians, Dr. Mani and Dr. Qadir.  (Id. at 15-17).  First,

Plaintiff appears to be relying on the "treating physician

rule", which under previous law required the ALJ to give

deference to the medical opinion of a claimant's treating

---

national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

physician.  See Fargnoli, 247 F.3d at 43.  However, the

regulations were revised as of March 27, 2017 to eliminate the

old "treating physician rule."  See 82 F.R. 5844.  Plaintiff

filed her claim after the regulation was changed and thus the

old regulation does not apply to her case.

In any case, the ALJ did not completely "disregard" the

opinions of Dr. Mani and Dr. Qadir; she explained why she did

not find them persuasive.  With respect to Dr. Mani, who treated

Plaintiff's mental health impairments, she noted that the

conclusions in the form completed by Dr. Mani were not supported

by treatment notes in the record and that there was no record of

treatment by Dr. Mani in the relevant period.  (R. at 25-26).

While an ALJ should consider a claimant's history prior to the

relevant period to inform a conclusion as to whether or not the

claimant is disabled, the crux is whether there is evidence of a

disability during the relevant period.  Miller v. Comm'r of Soc.

Sec., No. 20-3642, 2021 WL 3137439, at *2 (3d Cir. July 26,

2021) ("When a medical report does not address a claimant's

condition during the relevant period, the report has 'little, if

any, relevance to whether [the claimant] was disabled during

that time.'") (quoting Zirnsak v. Colvin, 777 F.3d 607, 614 (3d

Cir. 2014)).  The ALJ explicitly referenced that she had

considered treatment notes from prior to the relevant period but

ultimately determined that the lack of notes during the relevant

period undermined Dr. Mani's medical opinion.   (R. at 25-26).

The same is true for the ALJ's treatment of Dr. Qadir's medical opinion.   The ALJ explained that she found it unpersuasive because it was completed well after the relevant period.   (R. at 30).   She explained that although Dr. Qadir indicated that he had been seeing Plaintiff since 2015, he did not link his opinion rendered after Plaintiff's last insured date to the relevant period.   (Id.)   The ALJ finally explained that Dr. Qadir's conclusions about the severity of Plaintiff's conditions were not supported by the treatment history in the record.   (Id.)   The Court is thus satisfied that the ALJ considered the medical evidence in the record and applied the appropriate legal standards in discounting the opinions of Dr. Mani and Dr. Qadir.   Fargnoli, 247 F.3d at 42; Sykes, 228 F.3d at 262.

Plaintiff's next argument is that the ALJ improperly found her mental health conditions and carpal tunnel to be non-severe at step two and then compounded the error by failing to incorporate the limitations posed by them in the RFC.   (ECF 11 at 17-21).   At step two, a claimant has the burden to show that she had "(1) a medically determinable impairment shown by medically acceptable clinical and laboratory diagnostic techniques (2) that meets the duration requirement and (3) which significantly limited [her] ability to perform basic work

activities." Carter v. Comm'r Soc. Sec., 805 F. App'x 140, 142

(3d Cir. 2020).  At step two, the ALJ enumerated the four areas

of mental functioning that she considered when classifying

Plaintiff's mental health conditions as non-severe and explained

that she found they only left Plaintiff with a "mild impairment"

and thus did not significantly limit her ability to do work

activities.  (R. at 24-26).  For Plaintiff's carpal tunnel, at

step two, the ALJ based her assessment that the condition was

not severe on the fact that Plaintiff "had no carpal tunnel

treatment aside from a remote history of surgery prior to the

relevant period." (R. at 24).  The ALJ noted the absence of

evidence in the record that the condition precluded her ability

to work for 12 consecutive months.  (Id.)  The Court will not

second guess these determinations by the ALJ because the ALJ

adequately explained her reasoning.

Further, the ALJ's decision does address Plaintiff's mental

health conditions and carpal tunnel in the RFC.  For the mental

health conditions, the ALJ specifically stated "the following

residual functional capacity assessment reflects the degree of

limitation the undersigned has found in the 'paragraph B' mental

function analysis."  (Id. at 26).  The RFC analysis also

explicitly mentions Plaintiff's mental health conditions in the

context of considering her function reports and testimony at the

hearing.  (Id. at 28).  The same is true of Plaintiff's carpal

13

tunnel.  (Id.)  Given that the ALJ's consideration of

Plaintiff's conditions is referenced in the RFC, the ALJ was not

required to reiterate every tidbit of evidence relating to them

in arriving at the RFC.  Hur, 94 F. App'x at 133.  Thus, the

Court finds no error in the ALJ's treatment of Plaintiff's

mental health conditions and carpal tunnel in the RFC analysis.[7]

   Next, Plaintiff argues that the ALJ's determination that

Plaintiff could complete light work was error because the ALJ

rejected medical evidence that undermined that conclusion

without explanation.  Plaintiff primarily cites to medical

evidence that was outside of the relevant period, much of it the

opinion by Dr. Qadir prepared after the relevant period.  As

stated above, medical evidence from after the relevant period is

not particularly salient to the disability determination.

Miller, 2021 WL 3137439 at *2.  The medical evidence in the

record for the time period in question, primarily visit notes by

Dr. Ana Cilursu from March 16, 2017, while documenting pain by

---

[7] The Court also notes that the RFC analysis requires the ALJ to
consider only those impairments that are documented.  Morder v.
Colvin, 216 F. Supp. 3d 516, 528 (M.D. Pa. 2016) ("It is
axiomatic that an RFC assessment must include all of a
plaintiff's documented impairments.").  The ALJ specifically
noted that there was no documentation of Plaintiff's mental
health conditions during the relevant period in the record.  (R.
at 25) ("The record, however, during the relevant period, shows
no mental status examinations or psychiatric treatment to
substantiate these limitations.").  In any case, the ALJ
considered Plaintiff's mental health conditions based on
Plaintiff's prior medical history.

14

Plaintiff, is sparse and appears to be just a follow up visit.
(R. at 649-651).   The ALJ specifically referenced that doctor's
visit in her determination regarding light work and found that
it was just a "routine" follow up.   (R. at 29).   Plaintiff also
mischaracterizes the ALJ's decision in stating that it did not
consider the affect of Plaintiff's obesity on the light work
determination.   The ALJ stated, "[t]he functional effects of the
claimant's obesity on the ability to perform basic work
activities has been considered, under SSR 19-2p, and
incorporated in the residual functional capacity assigned herein
accordingly."   (Id.)   Again, the ALJ was not required to parse
every tidbit of evidence when her opinion was otherwise
supported by substantial evidence.   Hur, 94 F. App'x at 133.

Plaintiff's fourth argument is that the ALJ erred by not
including limitations in the RFC consistent with Plaintiff's
limited ability to communicate in English.   (ECF 11 at 25).
Plaintiff relies on this Court's decision in Saez-Ortiz v.
Comm'r of Soc. Sec., No. 1:17-CV-06286-NLH, 2019 WL 324922, at
*7 (D.N.J. Jan. 25, 2019) where the Court remanded a case to the
Commissioner for failure to discuss the impact of the claimant's
ability to speak English in the RFC.   But Saez- Ortiz is
factually different from the case here.

In Saez-Ortiz, this Court was faced with a situation in
which the plaintiff argued that the ALJ failed to provide the

15

vocational expert (the "VE") with a hypothetical that accounted

for the plaintiffs lack of English proficiency and that that

error was compounded because the ALJ did not solicit from the VE

a reasonable explanation as to why she could perform certain

jobs that the Dictionary of Occupational Titles listed as

requiring a higher level of proficiency in English than the

plaintiff possessed.  See generally id.  The key difference

there is that the ALJ in Saez-Ortiz affirmatively found the

plaintiff to be illiterate in English.  Id. at *6.  Here, the

ALJ made no such finding and stated that Plaintiff specifically

came to the United States to learn how to speak English and had

"specialized training learning how to speak English" (R. at 25).

Though the Plaintiff mentioned that she had difficulty in

English and used an interpreter at the hearing, she testified

that she used English to communicate with customers when she was

a casino dealer.  (R. at 44).  In addition, Plaintiff indicated

on a medical form from 2015 that one of her preferred languages

was English.  (R. at 1493).  Based on the evidence in the

record, the Court discerns no error in the ALJ's decision not to

include a limitation in English in the RFC.[8]

---

[8] It is also curious, and telling, that Plaintiff's argument
boils down to a contention that she cannot do her prior job as a
casino dealer because of her difficulty speaking English when
she testified that she was able to communicate in English when
doing that job in the past.

16

In Plaintiff's final argument, she states, "The ALJ erred in dismissing a decade of evidence documenting the debilitating nature of Plaintiff's physical and psychological conditions based on a five-week gap in medical records." (ECF 11 at 26). The "five-week gap" that Plaintiff references, though, is the entirety of the relevant period from February 23, 2017 to March 31, 2017.  Plaintiff's disability in the period prior to that date was already adjudicated in a previous decision by a different ALJ, which Plaintiff did not appeal.  (ECF 11 at 1; R at 21).  Res judicata barred the ALJ from making a finding of disability prior to February 23, 2017.  20 C.F.R. § 404.957(c)(1).  Similarly, the ALJ was precluded from making a disability determination after Plaintiff's last insured date of March 31, 2017.  See Pearson v. Comm'r of Soc. Sec., 839 F. App'x 684, 688 (3d Cir. 2020) ("While evidence generated after a claimant's date last insured can shed light on his condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured.").

The ALJ did not disregard Plaintiff's medical records from before and after the relevant period.  Rather, she discounted them based on her determination of how probative they were of whether Plaintiff was disabled during the relevant period.  The

17

ALJ cited numerous times to medical records from prior to and after the relevant period and explained how they factored into her analysis.  (R. at 24-30).  She did not simply reject a medical statement "for technical reasons, i.e. the date it was completed."  Murphy v. Comm'r of Soc. Sec., No. CV 19-6425 (RBK), 2020 WL 1486041, at *9 (D.N.J. Mar. 26, 2020).  Overall, the ALJ appropriately focused her review on medical records that spoke to Plaintiff's limitations during the relevant period.  Miller, 2021 WL 3137439 at *2.  Ultimately, Plaintiff appears to be trying to get around the res judicata bar associated with the adjudication of her previous claim.  The Court will not countenance such a workaround in the absence of adequate records during the relevant time period of the renewed application.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.

Date:   July 7, 2022                     s/  Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.